VERNON A. NELSON, JR., ESQ.
Nevada Bar No.: 6434
THE LAW OFFICE OF VERNON NELSON
9480 S. Eastern Ave., Ste. 252
Las Vegas, NV   89123
Tel.: 702-476-2500
Fax. : 702-476-2788
E-mail: vnelson@nelsonlawfirmlv.com
*Attorney for Plaintiff Susan Reifsnyder*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SUZANNE REIFSNYDER,<br><br>                Plaintiff,<br><br>v.<br><br>LINCOLN COUNTY SCHOOL DISTRICT, a county school district,<br><br>                Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>1. **Interference with Rights within the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et. seq.;**<br>2. **Violation of ADA and N.R.S. § 613.330 et. seq; and**<br>3. **Retaliation re: ADA & N.R.S. § 613.340.**<br><br>**JURY DEMAND REQUESTED** |

      Plaintiff, SUZANNE REIFSNYDER (hereinafter "Plaintiff or "Reifsnyder"), by and through her attorney of record, Vernon Nelson, Esq. of the Law Office of Vernon Nelson, and for her claims for relief against defendant, LINCOLN COUNTY SCHOOL DISTRICT (hereinafter "Defendant" or "the District"), complains and alleges as follows:

**JURISDICTION AND VENUE**

    1.    This  action is brought pursuant to the following:

        a.    The Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et. seq.; and
        b.    The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201, et. seq.

    2.    This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

    3.    This action also arises out of claims from Nevada's anti-discrimination statutes, N.R.S. § 613.330, as well as claims arising under the common law of the State of Nevada. These

claims are so related to the claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution. As such, these claims are properly within the Court's jurisdiction pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in the District of Nevada (and its unofficial Southern District), pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices were committed in and arose in the District of Nevada.

5. Reifsnyder timely filed her Charge of Discrimination with the Nevada Equal Rights Commission ("NERC") on May 3, 2017.

6. Reifsnyder's case was transferred to the Equal Employment Opportunity Commission ("EEOC").

7. Reifsnyder received a Right to Sue Letter less then ninety days prior to filing this Complaint.

8. Reifsnyder has satisfied all administrative and jurisdiction conditions precedent to filing this Complaint.

## THE PARTIES

9. Reifsnyder was, at all relevant times, a resident of Lincoln County, Nevada.

10. The District was, at all relevant times, a county school district located in Nevada.

11. At all relevant times, the District was Reifsnyder's employer, as that phrase is defined under :

    a. The Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et. seq.; and
    b. The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201, et. seq.

12. The District has over 50 employees.

13. As an employer with more than fifteen (15) employees, the District is required to comply with all state and federal statutes and laws prohibiting discrimination.

14. Reifsnyder was, generally, employed by the District as an instructional paraprofessional.

15. DOE Defendants I through X, inclusive, and ROE Corporations I through X, inclusive, are persons, corporations or business entities who are or which may also be responsible

for or who directed or assisted in the wrongful actions of the named Defendant. The true identities of the DOE and ROE defendants are unknown to Plaintiff at this time. Plaintiff therefore alleges that DOE and ROE defendants may be responsible in part for damages suffered by Plaintiff as a result of their own wrongful actions and/or of those of their agents and/or employees. Plaintiff will seek leave to amend this Complaint as soon as the true identifies of the DOE and ROE defendants are revealed to her.

**FACTUAL ALLEGATIONS**

16. Reifsnyder began her employment with the District, on or about December of 2000, as a part-time bus driver.

17. In or around 2004, Reifsnyder was hired as a full-time an instructional paraprofessional, at Pioche Elementary School, earning a salary of $30,000 plus benefits.

18. In or around 2015, Reifsnyder was diagnosed with Multiple Sclerosis.

19. On or about September 17, 2015, Reifsnyder requested, in writing, reasonable accommodations based on her disability.

20. The District approved Reifsnyder's request on or about November 24, 2015.

21. On or about May, 26, 2016, Reifsnyder received a positive evaluation of her job performance.

22. On or about the second month of the 2016-2017 school year, the District required Reifsnyder to re-request her accommodations.

23. On or about September 23, 2016, Reifsnyder, again requested, in writing, reasonable accommodations based on her disability.

24. During this time, after the school year began, the District revised Reifsnyder's job description, a job description created in December of 2005.

25. The job description added a section entitled "Essential Functions."

26. In the Essential Functions section, the District added physical and mental/intellectual requirements, such as, "heavy exertion of force involving 10-25 pounds frequently with up to 100 pounds occasionally" and "[m]ay involve negligible up to significant stand/walk/push/pull/carry."

///

27. After the District revised Reifsnyder's job description, on or about October 6, 2016, the District denied Reifsnyder's request for reasonable accommodations.

28. Importantly, on that same day, Reifsnyder was terminated, effective October 26, 2016.

29. Mrs. Reifsnyder immediately filed a grievance, with NSEA Uniserv Director, Summer Kay (hereinafter "Kay"), on or about October 10, 2016.

30. In her grievance, Reifsnyder requested reasonable accommodations and to be reinstated with the District.

31. The District denied Reifsnyder's grievance on or about October 31, 2016 and changed her effective day of termination to November 1, 2016.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### [Interference with Rights within the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et. seq.]

32. Plaintiff incorporates by reference each and every allegation previously made in this Complaint, as if fully set forth herein.

33. 29 U.S.C. § 2615(a)(1) declares it "unlawful for any employer to interfere with, restrain, or deny the existence of or the attempt to exercise" any right protected by the FMLA.

34. The Family Medical Leave Act guarantees qualified employees up to 12 weeks of leave for serious health conditions they, their spouses or family members suffer.

35. Reifsnyder qualified for FMLA based on the fact she had worked twelve (12) months and over 1250 hours.

36. Reifsnyder was never afforded the opportunity to take FMLA leave and was never informed it was available to her to take. That is important to note because "it is the employer's responsibility to determine when FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements. *Bailey v. Southwest Gas Co.,* 275 F.3d 1181, 1185 (9th Cir.2002) (emphasis added).

///

37. Reifsnyder suffered from a "serious health condition," defined by the FMLA, as she suffered from Multiple Sclerosis.

38. Reifsnyder properly informed the District of her serious medical condition on multiple occasions.

39. Despite this, the District's Human Resources Department failed to contact Reifsnyder or her treating physicians to determine if FMLA was appropriate.

40. DOL regulations state that "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 29 C.F.R. § 825.302(c)." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1134-35 (9th Cir. 2003)(internal citations included).

41. Even if Reifsnyder did not request FMLA leave, due to the circumstances of her serious medical condition, the District was aware that leave was needed for Reifsnyder's treatment and recovery.

42. An employer's good faith or lack of knowledge that its conduct violates FMLA does not protect it from liability. *Bachelder v. America West Airlines,* 259 F.3d 1112, 1130 (9th Cir. 2001).

43. The District was responsible for properly identifying Reifsnyder's FMLA leave. *Liu*, 347 F.3d at 1135.

44. The District interfered with Reifsnyder's rights under the FMLA.

45. In *Liu*, the Ninth Circuit held: A violation of the FMLA simply requires that the employer deny the employee's entitlement to FMLA leave. 29 C.F.R. § 825.220(a)(1) & (b). The employer here failed in its responsibility to assess Liu's entitlement to FMLA leave and therefore denied her a substantive right under FMLA. Denial of Liu's right to FMLA leave constitutes a violation of the FMLA. FMLA enforcement mechanisms protect employees against having to plead and negotiate with their supervisors to be granted leave they are entitled to receive under both FMLA and CFRA. We reverse the District court on this issue. *Liu*, 347 F.3d at 1136-37 (emphasis added).

46. The District's failure to properly assess Reifsnyder's rights under FMLA, despite their knowledge of her serious medical condition, constituted FMLA interference and shows the District had a complete disregard for Reifsnyder's FMLA rights.

47. As a direct and proximate result of the Defendant's above-described conduct, Reifsnyder has suffered damages in excess of $10,000.

48. As a further proximate result of the Defendant's conduct as described above, Reifsnyder was compelled to retain legal counsel. The Defendant is liable to Reifsnyder for attorney's fees and costs reasonably necessary and incurred by Reifsnyder, in a sum to be determined at the time of trial.

## SECOND CLAIM FOR RELIEF

**[Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201, et. seq. and N.R.S. § 613.330 et. Seq.]**

49. Plaintiff incorporates by reference each and every allegation previously made in this Complaint, as if fully set forth herein.

50. The ADA and N.R.S. § 613.330 et. seq. both render it illegal to terminate an employee who has, or is regarded as having, a disability.

51. The ADA states: "no covered entity shall discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. §12112(a). Under the ADA, the term "discriminate" is defined as including "not making a reasonable accommodation to the known physical or mental limitations of another wise qualified individual with a disability who is an…employee unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5). N.R.S. § 613.330 is interpreted the same.

52. ADA defines a "disability" as an impairment that substantially limits one or major life activities, a record of impairment, or being regarded as having such an impairment." 42 U.S.C. §12102(1).

53. The definition of disability shall be construed in favor of "broad coverage of individuals…to the maximum extent permitted by this chapter." *Id.* at § 12102(4)(A).

54. Whether a person is disabled under the ADA is an individualized inquiry. *Thornton v. McClatchy Newspapers,* 261 F.3d 789 (9th Cir. 2001).

///

55. The District knew Reifsnyder was disabled, or at least regarded her as disabled, when it decided to terminate her. To that end, 29 C.F.R. § 1630.2(i)(2) states an employer "will regard an individual as having a disability any time it takes a prohibited action against the individual because of an actual or perceived impairment, regardless of whether the [employer] ultimately establishes a defense for its actions."

56. The damages allowed under the ADA largely mirror those provided by the FMLA.

57. The ADA allows compensatory and punitive damages, attorney's fees and costs, and interest. 42 U.S.C. § 12117(a).

## THIRD CLAIM FOR RELIEF

### [Retaliation re: ADA & N.R.S. § 613.340]

58. The ADA and N.R.S. § 613.340 render it illegal to terminate an employee if they engage in a protected activity.

59. The preceding facts establish the District retaliated against Reifsnyder. To make out a prima facie case of retaliation, Reifsnyder must show "(1) [s]he engaged in a protected activity; (2) [her] employer subjected [her] to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

60. Protected activity includes reasonable accommodations requests Reifsnyder made to human resources within the District.

61. Causation is established when any adverse "action was implemented close on the heels of her request for accommodations. That an employer's actions were caused by an employee's engagement in protected activities may be inferred from 'proximity in time between the protected action and the allegedly retaliatory employment action.'" *Id.* at 1244 (internal citations omitted).

62. We have such proximity here based on the District's knowledge of Reifsnyder's health issues and requests for accommodations, and Reifsnyder's subsequent change in job description and termination.

63. Reifsnyder's termination was retaliatory in that the District terminated her because she reasonable accommodations regarding her disability.

64. The District's actions were retaliatory and contrary to Nevada public policy.

65. As a direct and proximate result of the Defendant's above-described conduct, Reifsnyder has suffered damages in excess of $10,000.

66. The District's actions were malicious, oppressive, fraudulent or done with reckless indifference to Reifsnyder's rights, thus justifying an award of punitive damages.

67. As a further proximate result of the Defendant's conduct as described above, Reifsnyder was compelled to retain legal counsel. The Defendant is liable to Reifsnyder for attorney's fees and costs reasonably necessary and incurred by Reifsnyder, in a sum to be determined at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Reifsnyder respectfully requests the Court issue relief as follows:

1. For a trial by jury;
2. For compensatory and punitive damages;
3. Prejudgment interest;
4. Reasonable attorneys' fees and costs; and
5. Such other relief the Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, 42 U.S.C. § 1981a(c)(1), and the Seventh Amendment to the United States Constitution, Reifsnyder hereby demands a jury trial.

DATED this 21st day of December, 2018.

THE LAW OFFICE OF VERNON NELSON

By: _____/s/Vernon Nelson_____
VERNON A. NELSON, JR., ESQ.
Nevada Bar No.: 6434
9480 S. Eastern Avenue, Suite 252
Las Vegas, NV  89123
*Attorney for Plaintiff Susan Reifsnyder*